Argued and submitted June 10, affirmed August 10, 1994

## STATE OF OREGON,
*Respondent,*

*v.*

## WILLIAM G. PAGE,
*Appellant.*

(92-6528; CA A81247)

879 P2d 903

Gail L. Meyer argued the cause for appellant. With her on the brief was Ransom, Blackman & Weil.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals from his conviction for violating OAR 635-05-200, which, through ORS 506.991, makes it a misdemeanor to "possess or land pink shrimp from any one trip or landing which exceeds an average count of 160 whole shrimp per pound." We affirm.

Defendant is a commercial shrimper. On August 22, 1992, state police officers observed shrimp being unloaded from defendant's fishing vessel to the Bornstein's Seafood Plant. Unofficial shrimp samples taken by Bornstein employees revealed counts that ranged from 180 to 190 shrimp per pound. Based on those unofficial counts, the officers sampled approximately 90 "totes" of shrimp being off-loaded from defendant's fishing vessel.[1] Defendant was charged with violating OAR 635-05-200 when official testing of those samples revealed an average count of approximately 190 shrimp per pound.

At trial, the officers testified that each of the shrimp they sampled had a full body, "where the bulk of the weight of the shrimp is actually concentrated," but that legs, antennae, or other appendages were missing.[2] At the conclusion of the state's case, defendant moved for a judgment of acquittal, arguing that there was insufficient evidence that the samples tested were "whole unbroken shrimp," within the plain and ordinary meaning of that term. The trial court denied defendant's motion on the ground that the jury could infer from the officers' testimony that the shrimp were "whole" and "unbroken." The jury convicted defendant of violating the rule.

Defendant first argues that the court erred in denying his motion for judgment of acquittal. We review the denial of a motion for judgment of acquittal to determine whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Rose*, 311 Or 274, 281, 810 P2d 839 (1991).

---

[1] Defendant does not assign error to the number of samples taken by the officers. The parties agree that the total weight of the unloaded shrimp was well in excess of 3,000 pounds.

[2] There was also testimony at trial attributing between seven and eleven percent of a shrimp's total body weight to its legs, antennae and other appendages.

In construing administrative regulations, as in construing statutes, it is the duty of the court to ascertain and declare what the legislature (or rule-making body) did, not what it might have done. An unambiguous regulation, like an unambiguous statute, should be enforced according to its clear language. *Schoen v. University of Oregon*, 21 Or App 494, 499-500, 535 P2d 1378 (1975); *see also Fors v. Motor Vehicles Division*, 47 Or App 447, 453, 615 P2d 331 (1980). In construing the text and context of a rule, words of common usage should be given their plain, natural and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

OAR 635-05-200 provides:

"(1)   It is *unlawful* to possess or land pink shrimp from any one trip or landing which exceeds an average count of 160 whole shrimp per pound. This rule shall not apply to landings or possession of less than 3,000 pounds of pink shrimp.

"(2)   To determine average count per pound when a landing exceeds 3,000 pounds of shrimp, one sample must be taken from each one thousand pounds up to a maximum requirement of 20 samples. *The sampling unit shall consist of at least one pound of whole unbroken shrimp.*" (First emphasis in original; second emphasis supplied.)[3]

It is apparent on the face of the rule, and defendant concedes, that the purpose of OAR 635-05-200 is to prohibit the taking of shrimp that are too small.[4] Limiting the maximum number of shrimp per pound to 160 is the means of accomplishing that purpose. At trial, state police officers and a fish biologist testified that they interpret the phrase "whole unbroken

---

[3] Since defendant's conviction, OAR 635-05-200 has been amended to add the following provision:

"(3)   For the purpose of determining count per pound 'whole shrimp' and 'whole unbroken shrimp' are defined as shrimp in which the body is substantially intact, including an identifiable carapace, abdomen, and telson (tail). It is not intended to require shrimp to have an unbroken rostrum, complete set of legs, antennae, or other appendages."

[4] That purpose is consistent with Oregon's policy underlying the development of fishing regulations. ORS 506.109 declares Oregon's policy of managing food fish "to provide optimum economic, commercial, recreational and aesthetic benefits for present and future generations of this state." One of the goals in managing food fish is "[t]o maintain all species of food fish at optimum levels * * * and prevent the extinction of any indigenous species." ORS 506.109(1).

shrimp" to mean shrimp that possess full bodies. The testimony at trial was uncontroverted that all of the shrimp in the sampling units possessed full bodies.

Defendant contends that OAR 635-05-200 is plain and unambiguous in its requirement that sampling units be made up of shrimp that are "whole" and "unbroken," and that his conviction must be reversed because the shrimp sampled by the officers were missing legs, antennae and other appendages. The state contends that sampling units must possess only whole unbroken bodies.

■ ■ We agree with the state. Defendant's argument focuses exclusively on the technical dictionary meaning of the terms "whole" and "unbroken." It fails to consider the context in which those terms are used in OAR 635-05-200; namely, "whole *shrimp*" and "whole unbroken *shrimp*." The ordinary person and, according to the testimony at trial, persons in the shrimp business, do not concern themselves with shrimp legs, antennae or other appendages. It is the body of the shrimp that matters. We hold that the plain, natural and ordinary meaning of the terms "whole shrimp" and "whole unbroken shrimp" in OAR 635-05-200 is shrimp that possess whole *bodies*.[5]

■ Taken in the light most favorable to the state, the evidence introduced was sufficient for the jury to conclude, as it did, that defendant had landed shrimp exceeding "an average count of 160 whole shrimp per pound." There was ample evidence that the shrimp landed by defendant were whole and smaller than allowed by the rule. The trial court correctly denied the motion for judgment of acquittal.

Defendant next assigns error to the denial of his motion in arrest of judgment. He argues that OAR 635-05-200 is unconstitutionally vague, because it fails to define the

---

[5] A law also should not be read in a manner that renders it essentially unenforceable and thereby produces an absurd result. *State v. Galligan*, 312 Or 35, 39, 816 P2d 601 (1991). Were we to accept defendant's dictionary definitions of the terms "whole" and "unbroken" as controlling the meaning of "whole shrimp" and "whole unbroken shrimp," OAR 635-05-200 would be absurd and unenforceable. Evidence at trial established that, because of damage caused by nets and handling, "practically every" shrimp landed is missing legs, antennae or other appendages. At oral argument, defense counsel conceded that it was "rare to extreme" that shrimp landed would possess all of their appendages.

terms "whole shrimp" and "whole unbroken shrimp," thereby providing inadequate notice of what is a criminal act, and leaving police officers and jurors free to haphazardly count whatever they believe are "whole unbroken shrimp."

An enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 US 104, 108, 92 S Ct 2294, 33 L Ed 2d 222 (1972). The terms of a criminal law creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. It must also prevent a judge or jury from exercising uncontrolled discretion in punishing defendants. *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985); *State v. Robertson*, 293 Or 402, 408, 649 P2d 569 (1982); *State v. Hodges*, 254 Or 21, 27, 457 P2d 491 (1969). A criminal law is sufficiently definite if persons of common intelligence can understand what is prohibited; it need not define an offense with such exactitude that a person could determine in advance whether specific conduct in all possible factual circumstances will be found to be an offense. *State v. Cantwell*, 66 Or App 848, 853, 676 P2d 353, *rev den* 297 Or 124 (1984).

Here, there was testimony from a state police officer, from a commercial shrimper, and from defendant himself, that a shrimper can tell "right away" if shrimp landed are "obviously big" or "obviously small" under OAR 635-05-200. Defendant and other commercial shrimpers testified that they regularly weigh and count samples of their shrimp before bringing them to shore to determine if the catch will be legal.[6] As discussed above, we interpret the term "whole unbroken shrimp" in OAR 635-05-200 to mean shrimp that possess whole bodies. That interpretation avoids the ambiguity that could arise if the focus was on the significance of missing legs, antennae or other appendages. It is also consistent with the officers' testimony that compliance with OAR 635-05-200 is assessed by counting only shrimp with whole bodies. The language of OAR 635-05-200 is sufficiently definite for persons of common intelligence to understand that the prohibited conduct is landing shrimp whose bodies are too

---

[6] Commercial shrimpers testified that the count at sea will differ from the count on land, because icing the shrimp creates a weight difference, and, because they are a water soluble protein, shrimp lose weight the longer they are out of the ocean.

small. The trial court did not err in denying defendant's motion in arrest of judgment.

■        Defendant's final assignment of error regards the denial of his motion for a mistrial. He argues that the trial court should have granted his motion, because at trial a police officer referred to "other past cases" involving defendant.[7] We decline to consider defendant's assignment because it was not preserved for appeal. *State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991).[8]

Affirmed.

---

[7] The officer testified:

"My contact I believe at first by phone I called him and asked if he was going to be around and then went by the residence, served him with the citation charging him with the landing of pink shrimp which exceeds the average count of 160 shrimp per pound. We have [*sic*] a brief conversation at that time, it was very brief. *There was some, Mr. Page asked a question as far as why it always seemed to be him who was singled out for the shrimp cases. Referring to some other cases we have had in the past.* Again, it was just a real brief conversation, nothing really noteworthy." (Emphasis supplied.)

Defendant neither objected nor moved for a mistrial when the officer made that statement. Instead, he waited until the officer and another witness had completed their testimony before moving for a mistrial.

[8] Defendant also appears to argue that the trial court erred by denying a subsequent motion for a new trial. That motion was based on the same testimony that gave rise to his motion for a mistrial. The denial of a motion for a mistrial is not the proper basis for appealing the denial of a motion for a new trial. *State v. Montgomery*, 294 Or 417, 422 n 1, 657 P2d 668 (1983); *see also State v. Sullens*, 314 Or 436, 440-43, 839 P2d 708 (1992).