250 P.3d 13 (2011)
241 Or. App. 177
Robert Doyle MURPHY, Petitioner,
v.
BOARD OF PAROLE AND POSTPRISON SUPERVISION, Respondent.
No. A141520.
Court of Appeals of Oregon.
Submitted April 2, 2010.
Decided February 23, 2011.
*15 Robert Doyle Murphy filed the briefs pro se.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.
Before ORTEGA, Presiding Judge, and SERCOMBE, Judge, and LANDAU, Judge Pro Tempore.
LANDAU, J., Pro Tempore.
The Board of Parole and Post-Prison Supervision (board) issued a final order revoking petitioner's parole because he violated a special condition of his parole that prohibited him from using or possessing an intoxicating beverage. He advances a number of different challenges to the order, including that its findings are not supported by adequate evidence, that the special condition that he is supposed to have violated is unconstitutionally vague, and that the board violated his rights to procedural due process on a number of different grounds. We conclude that none of the challenges has merit and affirm.

*16 I. FACTS
In 1976, petitioner brutally raped and murdered the victim while he was intoxicated. He pleaded guilty to intentional murder and was sentenced to life imprisonment, with the possibility of parole. In 2007, petitioner was released on parole. Because of the nature of the underlying offensespecifically, the fact that he was intoxicated at the timehis parole supervision conditions included Special Condition No. 9, a requirement that "[o]ffender shall not possess or use intoxicating beverages." While on parole, petitioner resided at Sponsors, Inc., a transitional housing residence for ex-convicts.
In November 2007, a Sponsors staff member, Charles Ong, approached petitioner because he smelled alcohol on petitioner's breath and observed that petitioner's eyes were bloodshot. Ong asked petitioner to submit to a breath test, and petitioner agreed. He registered a blood alcohol content (BAC) of .013 percent. Petitioner told Ong that he had not consumed alcohol but had just recently gargled Listerine. Ong notified petitioner's parole officer, Lydia Garcia, of the breath test results.
The next day, petitioner voluntarily reported the positive alcohol test result to Garcia and submitted two urine samples. The first sample was tested on site and tested positive for methamphetamine but not alcohol. Petitioner denied use of both substances. Petitioner was arrested and returned to supervised custody for violating parole based on the positive test result for methamphetamine.
The second urine sample was sent to Redwood Toxicology Laboratory, a renowned testing facility located in California. That sample tested negative for methamphetamine, but tested positive for alcohol use. The test performed by the lab to determine alcohol use examined the urine's ethyl glucuronide (EtG) level. As the lab's chief toxicologist, Wayne Ross, explained in a letter to the board, "since EtG is only detected in urine when ethanol[, i.e., alcohol,] has been ingested, and due to its extended detection time and stability in urine, EtG serves as an excellent `biomarker' for determining recent alcohol use and/or chronic alcoholism." Ross further explained that an EtG level of 100-2000 ng/ml would represent incidental exposure to ethanol from household products, such as Listerine or Nyquil. The EtG level of petitioner's urine sample was 5220 ng/ml. Ross's letter concluded that an EtG concentration of 5220 ng/ml resulting from use of Listerine would be "extremely unlikely." In a phone conversation between Garcia and another technician at the lab, that technician asserted that petitioner would have had to "consume bottles and bottles of Listerine to obtain such a high reading for the presence of alcohol."
On December 13, 2007, petitioner was provided with a notice-of-rights hearing by a board hearings officer, Hessman. Hessman advised petitioner that he was being accused of violating Special Condition No. 9, consuming an intoxicating beverage. Petitioner denied consuming an intoxicating beverage and stated that he was in the habit of gargling Listerine, which, unknown to him until just recently, contains alcohol. At that time, petitioner (1) requested a hearing; (2) requested that an attorney be appointed to him; and (3) requested that two Sponsors employees, Ong and Brummett, be present at the hearing as witnesses. Hessman denied petitioner's request for an attorney, asserting that he did not qualify as indigent. Hessman also denied petitioner's request for the witnesses to be present, asserting that they were irrelevant to petitioner's violation.
On January 3, 2008, the board conducted a revocation hearing. The hearings officer, Barker, first addressed petitioner's request for a board-appointed attorney. Barker denied the request because (1) petitioner had no colorable claim that amounted to a reasonable defense regarding consumption of alcohol; (2) there were no complex issues; and (3) petitioner understood the English language and could speak on behalf of himself. Barker also noted that petitioner received over $500 per month in VA benefits and had chosen not to retain an attorney. Barker then denied petitioner's request for the appearance of the two witnesses whom petitioner requested because they were irrelevant to the allegations against him.
*17 At the hearing, petitioner received a copy of the lab's report showing his EtG of 5220 ng/ml, as well as Ross's explanatory letter describing the results and their implications. Both were submitted as evidence. Garcia, Hessman, and petitioner presented testimony. Garcia referred to statements made by Ong and the lab report findings.
Petitioner testified at the hearing that he had not used intoxicating beverages. He again argued that any evidence showing alcohol in his system was a result of his Listerine use. He also, for the first time, asserted that Nyquil might also be to blame for the alcohol in his system. Petitioner stated that he used Nyquil four to six times a day and asserted that he just recently learned that Nyquil contained alcohol. Petitioner wanted to question Ong about whether Ong asked petitioner if he was using mouthwash and how Ong could smell alcohol on petitioner's breath if he also smelled the mouthwash. Petitioner also questioned the validity of Ross's toxicology report.
In his hearing report, Barker found that petitioner, "as reported by Redwood Labs, and smelled by the staff at Sponsors, Inc., was using some type of alcohol. He admits that he was using Nyquil and Listerin[e], to control his pain." Barker concluded that petitioner violated Special Condition No. 9, which forbids petitioner from consuming an intoxicating beverage, and that his parole should be revoked. Barker stated that, because petitioner "admits having alcohol in his system, whether by consumming [sic] beer, hard liquor, or any other source, plus having a positive test from a renowned lab, he is found to be in need of revocation * * *." After reviewing Barker's hearing report and two letters from petitioner contesting Barker's conclusions, the board accepted Barker's recommendation and revoked petitioner's parole.
Petitioner filed exceptions to the board's decision. He again denied drinking intoxicating beverages and asserted that his high EtG must be a result of his Listerine and Nyquil use. Petitioner also raised several procedural issues regarding the manner in which the hearing was conducted. Specifically, he noted the board's failure to give him advance notice of the evidence and witnesses against him, the denial of his right to call witnesses, the denial of his right to cross-examine the board's witnesses, and the denial of a board-appointed attorney. Last, petitioner attacked the reliability of the EtG test, citing a 2006 U.S. Department of Health article that stated that "disciplinary action based solely on a positive EtG * * * is inappropriate and scientifically unsupportable at this time." (Emphasis added.) After reviewing the record and petitioner's two letters, the board revoked petitioner's parole for violation of Special Condition No. 9.
Petitioner timely sought administrative review of the revocation order, arguing, among other things, that the order lacked substantial evidence and was issued in violation of his due process rights. Because more than a year had passed since petitioner had requested administrative review and he did not receive a response, he filed this petition for judicial review. The board moved to dismiss the petition on the ground that petitioner had failed to exhaust his administrative remedies. See ORS 144.335(1)(b) (judicial review available if "[t]he person has exhausted administrative review as provided by board rule"). By order of the Appellate Commissioner, the motion was denied under Taylor v. Board of Parole, 200 Or.App. 514, 520-21, 115 P.3d 256, rev. den., 339 Or. 475, 124 P.3d 1248 (2005), because the board had exceeded the latitude accorded to it by the legislature in choosing not to impose time constraints on the board's administrative review process.
Thereafter, the board issued its administrative review response, in which it explained:
"At the end of the day, [petitioner's] urine tested positive for alcohol at a level that was well over the cutoff amount for incidental alcohol usage. As the Board views the record, offender first claimed Listerine was the cause and then later added Nyquil as the possible cause. What is missing, however, is any argument that [petitioner] did not usewhether inadvertent[ly] or notintoxicating beverages, which is clearly prohibited by [Special Condition No. 9]."
*18 The board then rejected petitioner's alleged procedural errors as being without merit and denied petitioner relief, thereby affirming the revocation order.

II. ANALYSIS
On judicial review, petitioner renews his arguments that the revocation order lacks substantial evidence. He also argues that Special Condition No. 9 is itself unconstitutionally vague and that the board's order was issued in violation of his due process rights for a variety of reasons. Petitioner also argues that he was entitled to a board-appointed attorney. We address each issue in turn.

A. Substantial Evidence

Petitioner's first assignment of error is that "[t]he [b]oard erred when it revoked petitioner's parole without sufficient evidence that petitioner ingested any intoxicating beverage." The board responds that the record affords more than adequate evidence to support its finding that petitioner ingested an intoxicating beverage. We agree with the board.
"Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). Therefore, we examine the entire record to determine whether there was sufficient evidence to permit a reasonable person to conclude that petitioner violated Special Condition No. 9 by consuming an intoxicating beverage.
In this case, the record demonstrates that a Sponsors staff member smelled alcohol on petitioner's breath, that petitioner had bloodshot eyes, and that his BAC tested at .013 percent. The record further contains evidence that his urine tested positive for alcohol at a high level. Specifically, the Redwood Toxicology Laboratory report showed an EtG level in petitioner's urine that indicated a high level of alcohol, significantly higher than incidental use and high enough that the notion that the results could be explained by petitioner's use of mouthwash was "extremely unlikely." According to the lab report, EtG testing "serves as an excellent `biomarker' for determining recent alcohol use."
Petitioner insists that, although such evidence does exist, it is not sufficient to satisfy the statutory requirement of "substantial evidence." That is so, petitioner contends, for three reasons. First, petitioner contends that he offered evidence that the EtG test "should not be used as primary or sole evidence (as done in this instance) in the criminal justice context * * *." Second, he contends that the EtG test was conducted based on "mis-information," namely that the lab was informed that he had "swished" Listerine, not that he had "gargled" the mouthwash, as was actually the case. Third, he notes that an initial sample of his urine tested positive for methamphetamine, not alcohol.
The problem with petitioner's arguments is that they neglect to take into account the nature of the substantial evidence standard of review. "[S]ubstantial evidence review `does not entail or permit the reviewing tribunal to reweigh or to assess the credibility of the evidence that was presented to the factfinding body.'" Middleton v. Dept. of Human Services, 219 Or.App. 458, 473, 183 P.3d 1041, rev. den., 345 Or. 94, 189 P.3d 749 (2008) (quoting Tigard Sand and Gravel, Inc. v. Clackamas County, 151 Or.App. 16, 20, 949 P.2d 1225 (1997), rev. den., 327 Or. 83, 961 P.2d 217 (1998)).
In this case, the board was not required to share petitioner's skepticism of the EtG results, but was permitted to assess the reliability of the test and its results based on other evidence, such as Ross's letter, which detailed that the test was reliable and that, in fact, EtG testing is an "excellent" biomarker for recent alcohol consumption. Moreover, and contrary to petitioner's assumption, the board did not rely on the EtG test as the "primary or sole evidence" against him. Finally, the fact that one of several test results reported methamphetamine, and not alcohol, use does not establish that it was unreasonable for the board to have relied on the other, contrary, test results, which were also consistent with the eyewitness testimony from the staff member who smelled alcohol on petitioner's breath and observed *19 his bloodshot eyes. We reject petitioner's substantial evidence challenge without further discussion.

B. Substantive Due Process

Petitioner's second and third assignments of error are not easy to decipher. In his second assignment, he contends that the board's order violated his "Due Process Rights" by depriving him of a "vested liberty interest" in continued parole by finding that use of medicinal products that contain alcohol amounted to a violation of Special Condition No. 9. In his third assignment, he similarly contends that the board's "failure to clarify or make petitioner aware" that use of medicinal products would constitute a violation of his conditions of parole violates his rights to liberty and due process. In his argument in support of those assignments, petitioner complains that the condition of parole itself "was vague and not clearly made to petitioner" and that any reasonable person would think that the term "intoxicating beverages" does not include household medicinal products.
Those assignments appear to be directed at two different aspects of substantive due process guarantees afforded by the Fourteenth Amendment to the United States Constitution. The first is that the board's decision was simply irrational in that it penalized him for taking household medicinal products that happened to contain alcohol. The second is that the special condition of parole itselfwhich prohibits taking "intoxicating beverages"is unconstitutionally vague in that it failed to provide him with adequate notice of what it prohibited.
Neither contention has merit. To begin with, petitioner's argument is predicated on the assumption that the board believed his assertion that the alcohol found in his system was a product of gargling mouthwash or ingesting cough syrup. As we have noted, however, the board expressly found that petitioner "tested positive for alcohol at a level that was well over the cutoff amount for incidental alcohol use." Under the "extremely deferential" test that applies to substantive due process challenges, petitioner cannot prevail unless he shows that no rational decision-maker could have reached the decision that the board did. Homebuilders Assn. v. Tualatin Hills Park & Rec., 185 Or.App. 729, 736, 62 P.3d 404 (2003). In light of the evidence in the record as a whole, petitioner simply cannot meet (he actually does not even mention) that test.
As for the vagueness challenge, at the outset, it is unlikely that petitioner's challenge is timely. Special Condition No. 9 was imposed in 2007. If petitioner believed that the condition was unconstitutionally vague, he could have challenged it then. ORS 144.335; cf. Sumner v. Choate, 114 Or.App. 406, 409, 834 P.2d 535 (1992) (rejecting vagueness challenge raised in a post-conviction proceeding on ground that it could have been advanced earlier). In any event, the standard that petitioner must meet in this regard is, again, a demanding one, viz., a law is not unconstitutionally vague "if persons of common intelligence can understand what it prohibited[.]" State v. Page, 129 Or.App. 558, 563, 879 P.2d 903 (1994). Petitioner does not explain, and we do not understand, why prohibiting the consumption of "intoxicating beverages" defies ordinary understanding. Petitioner's only argument is that no reasonable person would interpret the phrase to apply to incidental use of household medicinal products. The problem with that argument, as we have noted, is that it assumes that his parole was revoked for only incidental use of such products, when the board's order expressly is to the contrary.

C. Procedural Due Process

In his fourth assignment, petitioner contends that the board violated his due process rights when it "failed to allow petitioner's witnesses, additional testing, and appointment of counsel." In his argument in support of the assignment, he also mentions an additional procedural violation, specifically, that the board violated its own rules and constitutional due process guarantees when it failed to deliver lab reports that he had requested until the day of the hearing. The board responds that it did, in fact, fail to comply with its procedural rules in some respects, but that petitioner has utterly failed to demonstrate how those errors caused him *20 prejudice. The board observes that petitioner asserts that the violations of his procedural rights prejudiced him, but nowhere in his briefing does he explain how.
We begin with petitioner's rights as set out under the statutory scheme for revocation hearings, and then turn to petitioner's constitutional claims. State v. Nielsen, 316 Or. 611, 618, 853 P.2d 256 (1993) (statutory claims are considered before constitutional claims).

1. Violations of Procedural Rights under Statutory Provisions

Petitioner contends that the board violated several statutes and its own rules of procedure. First, ORS 144.343(3)(a) and (c) and OAR XXX-XXX-XXXX(2)(a) and (c) both require the board to provide notice of the evidence that will be presented and the witnesses that will testify at least three days before the revocation hearing. That, petitioner contends, was not done. Second, petitioner asserts that the board violated ORS 144.343(4)(a) and OAR XXX-XXX-XXXX(3) by prohibiting him from calling Ong and Brummett as witnesses for his defense. Third, petitioner contends that he had a right under ORS 144.343(4)(b) to cross-examine Ong and Ross, the technician who authored the letter regarding his EtG test results.
We begin with the requirement that the board provide notice of the evidence to be used against petitioner three days before the revocation hearing. It is undisputed that the board did not comply with that requirement. The board provided petitioner with all the requested information on the day of the hearing itself.
The fact that the board did not comply with the statute and the rules, however, does not, in and of itself, require that its decision be reversed and remanded. Procedural error will require reversal only if petitioner establishes that the error was not harmless, that is, that it caused him prejudice. O'Hara v. Board of Parole, 346 Or. 41, 50-51, 203 P.3d 213 (2009) (board's violation of ORS 144.343(3) and OAR XXX-XXX-XXXX the same statute and rule at issue in this casewas reversible because it was not harmless error); Meadows v. Board of Parole, 181 Or.App. 565, 579, 47 P.3d 506 (2002), rev. den., 335 Or. 355, 67 P.3d 937 (2003) (petitioner's challenge of board's designation of him as a "predatory offender" on one ground was harmless when petitioner failed to challenge an alternate ground for the board's decision); Maimon v. Board of Parole, 138 Or.App. 328, 330-31, 909 P.2d 874 (1995), rev. den., 323 Or. 690, 920 P.2d 550 (1996) (petitioner's challenge that the board had incorrectly listed his crime as sodomy in the first degree, as opposed to his actual conviction of sexual abuse in the first degree, was harmless, in that the petitioner did not suffer any prejudice as a result of the error because the sodomy crime was not assigned an independent crime category and history/risk score, and there was no evidence that the board considered the offense when making its decision).
In this case, it bears remembering that it is undisputed that the board provided petitioner with all the information that he requested on the day of the hearing. The board's violation was in not providing the information three days earlier. Petitioner does not explain the prejudice that flowed from the fact that the board was 72 hours late in complying with his request. He was allowed the opportunity to write the board following the hearing and supply information and argument as to why he believed there were discrepancies and errors in the board's evidence, and he took advantage of that opportunity. He makes no effort to identify what else he would have done during the three days before the hearing had he been provided the information at that time. In fact, in his opening brief, he does even address the issue. And, in reply to the board's assertion that any error was harmless, he simply asserts, without any explanation, that the board's tardy disclosure of the requested information did not "allow him sufficient time to present a defense." We conclude that petitioner has failed to establish that the board's error was not harmless.
We turn to petitioner's contention that the board erred in failing to allow him to call witnesses, specifically, Brummett and Ong. ORS 144.343(4)(a) allows petitioner to *21 call witnesses who have "relevant information" regarding whether or not he violated Special Condition No. 9. As to Brummett, petitioner never explained to the board what relevant information the witness could have provided. Even on judicial review, petitioner does not explain what he expected Brummett to say that would have been relevant to his case. Indeed, petitioner never asserted that Brummett had witnessed his use of Listerine or Nyquil, and he acknowledged that Brummett was not present during the initial confrontation between Ong and petitioner. We conclude that the board did not err in refusing petitioner's request to call Brummett as a witness.
As to Ong, petitioner again provided no explanation to the board what testimony he expected the witness to supply. It is difficult for us to understand how the board "erred" in declining to allow him to call the witness when he never explained to the board what he expected the witness to say. On judicial review, for the first time, petitioner suggests that he wanted to elicit testimony about Ong's training in the use of a Breathalyzer; question him about how Ong administered the test; ask him, in particular, when the machine was last calibrated; ask him about what he observed to be Ong shaking as he administered the test; and question him about why he decided to administer the test in the first place. Assuming, for the sake of argument, that providing such an explanation for the first time on judicial review could suffice, petitioner's explanation in this case remains inadequate. Even on review, petitioner does not explain what he expected Ong's testimony to be; rather, he simply complains that he did not get a chance to question the witness. Without some information as to the nature of the testimony that Ong was expected to provide, it is not possible for us to evaluate whether the testimony would have been of the sort that triggered the need to have him present under the statute.
For similar reasons, even assuming that the board erred in not allowing petitioner to call Ong, petitioner has failed to establish that the error was not harmless. Again, he does not actually address the issue in his briefing. He simply complains that he was not allowed to explore certain subjects and that we may speculate that Ong might have provided information that would have weakened the board's case. That is not sufficient to meet his burden.
We turn to petitioner's contention that the board erred in failing to allow him the right to cross-examine certain witnesses, specifically, Ong and Ross, the author of the lab report. ORS 144.343(4)(b) gives petitioner the right to cross-examine all witnesses that give testimony against him "unless it has been determined that there is good cause not to allow confrontation." Returning to the specific issues raised by petitioner, we begin by considering the analysis that applies to the board's alleged improper denial of petitioner's right to confront and cross-examine the adverse witnesses Ong and Ross. We recently addressed the analysis of that right in the context of probation revocation hearings. In State v. Wibbens, 238 Or.App. 737, 741-42, 243 P.3d 790 (2010), we explained:
"[The right to confront and cross-examine adverse witnesses], at its core, requires that a probationer `receive a fair and meaningful opportunity to refute or impeach the evidence against him in order to "assure that the finding of a [probation] violation will be based on verified facts."' United States v. Martin, 984 F.2d 308, 310 (9th Cir.1993) (citations omitted). Nonetheless, due process in this setting is a flexible concept and confrontation may give way where other evidence provides an adequate alternative: `While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey [v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)] intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.' [Gagnon v. Scarpelli, 411 U.S. 778, 783 n. 5, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).]
"In order to determine whether admission of hearsay evidence at a probation revocation proceeding violates a probationer's right to confrontation, we have adopted the Ninth Circuit's balancing approach, *22 which weighs the probationer's interest in confrontation against the government's good cause for denying it. State v. Johnson, 221 Or.App. 394, 401, 404, 190 P.3d 455, rev. den., 345 Or. 418 [198 P.3d 942] (2008); see also [U.S. v. Comito, 177 F.3d 1166, 1170 (9th Cir.1999)] (explaining general principles and applying balancing test). The relevant factors in that analysis include `(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence.' Johnson, 221 Or.App. at 401 [190 P.3d 455] (citing United States v. Walker, 117 F.3d 417, 420 (9th Cir.1997))."
(Second brackets in original.) In Wibbens, we ultimately concluded that the admission of hearsay evidence in violation of the probationer's confrontation rights was not harmless and required reversal because that evidence was the sole evidence of the probation violation. 238 Or.App. at 744, 246 P.3d 101.
We do not see any reason to apply a different analysis to the due process right to confront adverse witnesses in the context presented herethat of a parole revocation hearingthan was recently applied by this court in the context of a probation revocation hearing. Moreover, as indicated above, that approach tracks with the approach taken recently by the Ninth Circuit. In Valdivia v. Schwarzenegger, 599 F.3d 984, 989, reh'g den. en banc, 623 F.3d 849 (9th Cir.2010), the Ninth Circuit applied its balancing analysis to the parole revocation setting:
"In Comito, this court specified the test for the confrontation rights of parolees. `[I]n determining whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it.' 177 F.3d at 1170. The weight given to a parolee's right to confrontation is assessed by two non-exhaustive factors: `the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the evidence.' Id. at 1171. If the hearsay evidence is not important to the finding of a violation, the error in admitting the hearsay evidence can be considered harmless, but is still subject to the good cause analysis. Id. at 1171-72."
(Brackets in original.) Accordingly, we extend the analysis used by this court in Johnson and Wibbens to the issue presented in the instant case.
Our prior cases on this issue, which include Johnson and Wibbens, have consistently arisen in the context of objections to the admission of hearsay without the opportunity to confront and cross-examine the adverse witness. Unlike those cases, however, petitioner here has failed to raise, in any respect, an objection to the admission of the hearsay statements of Ong and Ross. Without an indication to the hearings officer or the board that it should not consider those statements in rendering its decision, petitioner cannot now complain that he has been harmed by the denial of his right to cross-examine those adverse witnesses. Because petitioner did not object to the admission of the hearsay statements of Ong and Ross below, petitioner cannot demonstrate that he was prejudiced by the denial of his right to cross-examine those witnesses.

2. Violations of Procedural Rights under the Due Process Clause

Petitioner also assigns error to a litany of alleged procedural defects that petitioner claims violate his procedural due process rights under the Fourteenth Amendment to the United States Constitution. Petitioner claims (1) that in making its decision the board failed to consider all the evidence presented by petitioner in his defense; (2) that he was coerced into signing his acknowledgment of rights form without truly understanding his rights; (3) that he was denied the right to a fair hearing officer; (4) that he was denied the right to have witnesses present as well as cross-examine adverse witnesses; and (5) that he was denied notice of the evidence against him prior to the date of the hearing.
*23 We hold that the first three of petitioner's contentions are meritless and that further discussion is not warranted. As to the final two contentions, we hold that, for the reasons set out above with respect to the alleged statutory violations, petitioner has failed to demonstrate that any of the errors that he contends occurred were not harmless. Walker, 117 F.3d at 421 ("Moreover, to warrant relief [under the Due Process Clause, a party] must show that he was prejudiced by the trial court's error.").

D. Right to a Board-Appointed Attorney

Petitioner also assigns error to the board's denial of his request for a board-appointed attorney under ORS 144.343(3)(f) and (4)(d) and the board's own rule, OAR XXX-XXX-XXXX(2). The statutes provide that a petitioner, if indigent, may "have counsel provided at board expense," ORS 144.343(4)(d), if the petitioner supplies a request that "is based on a timely and colorable claim" that either he did not violate the parole condition, there were mitigating circumstances for any uncontested violation, or the petitioner, "in doubtful cases, appears to be incapable of speaking effectively" on his own behalf. ORS 144.343(3)(f). The administrative rule essentially tracks the statute.
In Ritchie v. Board of Parole, 35 Or.App. 711, 715, 583 P.2d 1, modified on recons., 37 Or.App. 385, 587 P.2d 1036 (1978), we explained that the statute was enacted "in an attempt to codify the [Due Process] requirements outlined in the United States Supreme Court opinion in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)." We further stated that both the Gagnon requirements and Oregon statutes "allow discretion in the first instance to the hearings officer whether to grant an indigent parolee's request for appointed counsel[,]" and that "[t]he Oregon statutes were especially tailored to allow the state authority charged with administering the parole system discretion in making a case-by-case analysis of an indigent's need for appointed counsel." Ritchie, 35 Or.App. at 716, 583 P.2d 1. Indeed, the case law speaks of a presumption against the right of appointed counsel at a parole revocation hearing. Gagnon, 411 U.S. at 790, 93 S.Ct. 1756 (stating that "the presence and participation of counsel will probably be both undesireable and constitutionally unnecessary in most revocation hearings"); see also Graves v. AFSD, 76 Or.App. 215, 222-23, 708 P.2d 1180 (1985), rev. den., 300 Or. 605, 717 P.2d 1182 (1986) (referring to "the presumption against the right to appointed counsel").
Putting our statements in Ritchie aside for the moment, however, whether the text of ORS 144.343(3)(f) authorizes the board, in all cases, to exercise discretion in determining whether to appoint counsel in parole revocation proceedings is less than clear. The board has "discretion" only in circumstances where it can choose among several legally correct outcomes. In that case, our review of the board's choice is for abuse of discretion. Where there is only one legally correct outcome, however, the concept of discretion is inapplicable, and our review of an agency or court decision is one for errors of law. Cf. State v. Rogers, 330 Or. 282, 312, 4 P.3d 1261 (2000) (stating the same principle in the context of a trial court's authority to make evidentiary rulings).
We need not decide in this case, whether and to what extent Ritchie may have overstated the discretion of the board to deny appointed counsel to an indigent parolee. That is so because petitioner failed to preserve the core issue that he now asks us to reviewwhether the board erred in denying him counsel under ORS 144.343 when his defense to the alleged violation was based on the use of Listerine and Nyquil. Petitioner never timely raised a request for counsel on that basis. Evidence in the record establishes that petitioner initially requested counsel at the notice of rights hearing, at which time he contested the alleged violation and asserted a defense based only on incidental Listerine use. The first time that petitioner raised a defense also based on Nyquilthe defense he asks us to reviewwas at the revocation hearing itself, during his presentation of evidence. In other words, petitioner never alerted either hearings officerHessman or Barkerthat he was entitled to an appointed attorney on the ground that he had a colorable claim based also on Nyquil *24 use. Because petitioner below never made a timely request for counsel based on his Nyquil defense, petitioner cannot now complain that he has been harmed by the denial of counsel on that basis.
Affirmed.