Argued and submitted January 27, 2016, affirmed May 17, 2017

Bill CARROLL,
*Petitioner,*

*v.*

DEPARTMENT OF PUBLIC SAFETY
STANDARDS AND TRAINING,
*Respondent.*

Department of Public Safety
Standards and Training
1001859; A152551

396 P3d 938

Conrad E. Yunker argued the cause for petitioner. With him on the opening brief were Conrad E. Yunker, P.C., and Paul R. Burgett. On the reply brief was Conrad E. Yunker.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**SERCOMBE, P. J.**

Petitioner seeks judicial review of an order of the Department of Public Safety Standards and Training (DPSST) determining that he committed two violations of the standards of conduct governing private investigators and assessing a penalty of $500 for each violation pursuant to ORS 703.995(1)(a) (authorizing assessment of a civil penalty of not more than $500 for each offense) and an additional civil penalty of $65,655.24 for the costs of the proceeding pursuant to ORS 703.995(1)(b) (authorizing assessment of costs of disciplinary proceedings as a civil penalty). We review DPSST's order pursuant to ORS 183.482. We affirm the agency's determination that petitioner committed two violations as well as its assessment of penalties.

DPSST issued its final order after a hearing conducted by an administrative law judge (ALJ) for the Office of Administrative Hearings. We draw our summary of the facts from the agency's findings, which are not challenged on judicial review. Petitioner is a licensed private investigator with a long career in law enforcement. In 2008, he retired from the Oregon Department of Justice, and he and his wife, Amy Carroll, formed a private investigation firm, Carroll Consulting LLC, with Amy Carroll serving as the CEO and petitioner as Lead Consultant. In August 2009, Carroll Consulting entered into negotiations with the Elections Division of the Secretary of State regarding a pilot project to monitor signature gathering activities in connection with proposed ballot initiatives. The Secretary of State's proposal required the use of eight to 10 private investigators.

Private investigators are subject to licensing by DPSST under ORS chapter 703, which also includes requirements relating to continuing education, standards of conduct, and discipline. As defined in ORS 703.401(2), an "investigator" is

"a person who is a licensed investigator under ORS 703.430 and who engages in the business of obtaining or furnishing, or who solicits or accepts employment to obtain or furnish, information about:

"(a)   Crimes or wrongs done or threatened against the United States or any state or territory of the United States;

"(b)   The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activities, movements, whereabouts, affiliations, associations, transactions, acts, reputation or character of any person;

"(c)   The location, disposition or recovery of lost or stolen property;

"(d)   The cause of or responsibility for fires, libels, losses, accidents, damages or injuries to persons or property; or

"(e)   Evidence to be used before any court, board, officer, referee, arbitrator or investigation committee."

ORS 703.405 provides that "[a] person may not act as an investigator or represent that the person is an investigator unless that person is licensed under ORS 703.430."

ORS 703.450 describes the standards of conduct for licensed investigators. As relevant here, ORS 703.450(4) requires that a licensed investigator "[m]ay not commit an act that reflects adversely on the investigator's honesty, integrity, trustworthiness or fitness to engage in business as an investigator." ORS 703.450(6) provides that a licensed investigator "[m]ay not use unlicensed persons to conduct investigative activities."

Petitioner did not think that the work to be performed pursuant to the contract with the Secretary of State met the legal criteria for investigation or that the individuals performing the work would need to be licensed investigators.[1] But upon petitioner's inquiry, DPSST advised

---

[1] The contract described the services to be provided by Carroll Consulting LLC:

"Contractor to provide no fewer than eight and no more than ten investigators to provide the following deliverables, all investigators to be subcontractors of Carroll Consulting LLC:

"Conduct overt and covert surveillance of signature gathering to observe business practices and identify potential fraudulent activity.

"Gather evidence for potential prosecution.

"Work with Elections Division investigative staff and related agencies in investigating observed questionable activity and investigate tips from other observers.

"Investigation will focus on four primary areas of the signature gathering process:

petitioner that the persons hired by petitioner to monitor signature gathering activities were required to be licensed investigators. Carroll Consulting agreed to those terms and entered into the contract with the Secretary of State.

Petitioner, in turn, entered into an agreement with Carroll Consulting to perform investigative services under contract as a "Compliance Specialist." Carroll Consulting hired several other investigators. It also contracted with another private investigation firm, USO Consulting LLC, to assist in carrying out the contract with the Secretary of State.

Carroll Consulting provided regular reports of its activities to the Secretary of State and submitted invoices to the Secretary of State for its services. In those invoices, the services of investigators were described as "Compliance Specialists" and billed at a rate of $40 per hour. Amy Carroll's work was generally described as "clerical" and billed at a rate of $10 per hour. Petitioner testified that, within the company, Amy Carroll's position was identified as "Compliance Specialist/Clerical."[2]

USO Consulting is owned by Greg Olson, a licensed private investigator. Olson told petitioner that he planned to have his son, Garrett Olson, perform some investigating. Petitioner was aware that Garrett Olson was not a licensed investigator, but both petitioner and Gregg Olson believed that Garrett Olson's activities would be exempt from licensing under ORS 703.411(1), which provides exemption from licensing for "[a] person employed exclusively by one employer in connection with the affairs of that employer only[.]" Petitioner required Greg Olson to supervise and direct his son's activities.

---

"1) Procedural activities

"2) Pay-per-signature ban

"3) Fraudulent activity in signature gathering

"4) Undue Influence in signing and decline to sign activities."

[2] Under the agreement, the Secretary of State agreed to pay a lead investigator $70 per hour, an assistant lead investigator $60 per hour, and an investigator $40 per hour. The agreement was silent with regard to administrative work, but petitioner and the Secretary of State's office agreed orally that Amy Carroll, who was not a licensed investigator, would provide clerical work at a rate of $10 per hour.

In fulfillment of USO Consulting's agreement with Carroll Consulting, Garrett was assigned to observe signature gatherers at the Oregon State Fair. Garrett wrote up his observations in a report that USO Consulting sent to Carroll Consulting. For purposes of confidentiality, the report did not identify Garrett by name, but described him as an "investigator." Petitioner submitted that report to the Secretary of State. Garrett's activities are the basis for DPSST's determination that petitioner "used" an unlicensed person for investigation, in violation of ORS 703.450(6) (providing that a licensed investigator "[m]ay not use unlicensed persons to conduct investigative activities").

The Secretary of State asked petitioner to send an investigator to a training session for signature gatherers to be held by an organization in Albany, Oregon. Petitioner advised the Secretary of State that he did not have an investigator available. But when Amy Carroll learned of the event she decided to attend, against petitioner's wishes. Amy Carroll reported her observations to petitioner. Petitioner, in turn, prepared a report describing those observations and submitted it to the Secretary of State. The report stated that the observations had been made by a "Compliance Specialist," but did not identify Amy Carroll by name.[3] That report is the basis for DPSST's determination that petitioner violated ORS 703.450(4) (providing that an investigator "[m]ay not commit an act that reflects adversely on the investigator's honesty, integrity, trustworthiness or fitness to engage in business as an investigator") and OAR 259-061-0190(9) (requiring that investigators "[a]ctively seek and report the truth in the performance of their professional duties").[4]

DPSST imposed the maximum penalty of $500 for each of two violations, as authorized by ORS 703.995(1)(a),

---

[3] The report filed by petitioner relating to Amy Carroll's attendance at the Albany meeting stated:

"Arrangements were made to attend this training session. A Compliance Specialist attended the training and reported the following:

"[describing meeting]."

[4] DPSST concluded that the record did not support the additional charge that petitioner had "used" an unlicensed investigator based on Amy Carroll's observations at the Albany meeting, in violation of ORS 703.450(6), finding that Amy Carroll did not attend the Albany meeting at petitioner's direction and, in fact, attended against petitioner's wishes.

and imposed, as a "further civil penalty," the costs of the disciplinary proceeding in the amount of $65,655.24, as permitted by ORS 703.995(1)(b).[5] On judicial review, petitioner challenges DPSST's determination that there were violations and its imposition of penalties.

In his first assignment of error, petitioner challenges DPSST's determination that petitioner violated ORS 703.450(4) and OAR 259-061-0190 in reporting Amy Carroll's activities and observations at the Albany meeting. DPSST found that petitioner's use of the term "compliance specialist" in the report could only reasonably be understood to describe activities of an investigator and that, in so reporting Amy Carroll's activities, petitioner represented the observations as having been made by an investigator, which was untruthful.[6] Petitioner contends that, contrary to DPSST's finding, his characterization of Amy Carroll's work as that of a "compliance specialist" was not untruthful, because he considered everyone who worked for Carroll Consulting to be a compliance specialist and Amy Carroll's actual work title was "Compliance Specialist/Clerical." But the record includes evidence from which DPSST reasonably could find that the title "compliance specialist" designated an investigator. For example, in the report to the Secretary of State regarding activities from August 7 to August 25, 2009, petitioner stated that "Carroll Consulting LLC has developed working relationships with six individuals including Bill Carroll as Compliance Specialists. Two more specialists will be available for assignment by the first of next week * * * and arrangements are underway to bring on a third during the first week of September." That report provides substantial evidence in support of DPSST's finding

---

[5] The order described costs incurred for 425.2 hours billed by the Department of Justice and approximately 79 hours by the Office of Administrative Hearings.

[6] In determining that petitioner had violated ORS 703.450(4) and OAR 259-061-0190(9), the ALJ found:

"Given the consistent use of the term 'compliance specialist' to refer solely to investigators in all other communications with the Secretary of State, and given that the description of the [Albany] meeting appears to be the result of careful observations by an investigator, it is simply implausible that [petitioner] intended to use the term 'compliance specialist' to describe a clerical worker. The result was a report that was untruthful, and reflected adversely on [petitioner's] honesty and trustworthiness."

that the term "Compliance Specialist" as used by petitioner referred to investigators hired to fulfill the terms of the contract with the Secretary of State.

Petitioner further contends that violations of ORS 703.450(4) and OAR 259-061-0190(9), both of which involve dishonesty, necessarily require that the licensee act with a culpable mental state. *Cf.* ORS 703.450(1) (providing that a licensed investigator "[m]ay not knowingly make any false report to an employer or client"). Petitioner contends that DPSST mistakenly inferred that petitioner *intended* to misrepresent that Amy Carroll's observations had been made by an investigator (rather than by a "Compliance Specialist/ Clerical") because this record contains no evidence that petitioner intended to misrepresent Amy Carroll's status. Assuming, for purposes of this discussion, that the two provisions require proof that the licensee acted knowingly, we conclude that the evidence in the record is sufficient to permit that finding. There is evidence from which DPSST could find that petitioner knew that his report of observations made by a "compliance specialist" would be understood to describe activities by an investigator. We further conclude that, in finding that "it is simply implausible that [petitioner] intended to use the term 'compliance officer' to describe a clerical worker," DPSST implicitly found that petitioner intended to misrepresent that the work had been done by an investigator. We reject petitioner's further contention that DPSST was required also to find that the Secretary of State was actually misled by the misrepresentation. Neither the statute nor the administrative rule requires that the person receiving the information actually be deceived.

In his third assignment of error, petitioner challenges DPSST's determination that he violated ORS 703.450(6) by "using" Garrett Olson, an unlicensed investigator, to conduct investigations. ORS 703.450(6) provides that a licensed investigator "[m]ay not use unlicensed persons to conduct investigative activities." Petitioner contends that he did not "use" Garrett, in violation of ORS 703.450(6), because Garrett Olson was not Carroll Consulting's employee, but worked for and was supervised by USO Consulting.

The verb "to use" is not defined in ORS chapter 703. Referring to the dictionary, *Webster's Third New Int'l Dictionary* 2523-24 (unabridged ed 2002) (defining "use"), DPSST determined that the commonly understood meaning of "to use" is "to put into action or service" or "to carry out a purpose or action by means of." DPSST concluded that, in the absence of a statutory definition, the commonly understood meaning was applicable. DPSST rejected petitioner's contention that the use of an unlicensed person for purposes of ORS 703.450(6) depends on direct employment or supervision of the person's work. The question was whether Garrett Olson's services were used to carry out petitioner's obligation to the Secretary of State. DPSST found that because Garrett Olson conducted his investigation at the State Fair with petitioner's knowledge and for the purpose of carrying out Carroll Consulting's contract with the Secretary of State, petitioner "used" Garrett for investigative activity within the meaning of ORS 703.450(6). We agree with DPSST that the commonly understood meaning of the verb "to use" applies, and we conclude that substantial evidence supports DPSST's determination that petitioner used Garrett Olson for the fulfillment of Carroll Consulting's contract with the Secretary of State, in violation of ORS 703.450(6).[7]

We further reject petitioner's contention that, because Garrett worked for Gregg Olson and USO Consulting, his activities were exempt from licensing under ORS 703.411(1). That statute provides that the licensing requirements of ORS chapter 703 do not apply to "[a] person employed exclusively by one employer in connection with the affairs of that employer *only*[.]" (Emphasis added.) As DPSST explained, if Garrett had been performing activities for USO Consulting only, his activities might have been exempt, but

[7] Petitioner argues that the determination that petitioner violated ORS 703.450(6) by using Garrett Olson is inconsistent with DPSST's determination that petitioner did not violate the same provision by using Amy Carroll, who was also unlicensed. In both instances, petitioner contends, petitioner did not direct the person's activities. But the facts giving rise to the violation based on Garrett Olson's activities are different from those involving Amy Carroll. DPSST found that Amy Carroll attended the Albany meeting against petitioner's wishes, and reasoned on that basis that petitioner did not willingly use her for investigating. In contrast, as discussed above, petitioner allowed Garrett Olson to carry on investigative activities for the purpose of fulfilling the contract with the Secretary of State, knowing that he was unlicensed.

the exemption did not extend to investigation provided for Carroll Consulting in performance of the contract with the Secretary of State. Thus, we conclude that DPSST did not err in determining that Garrett Olson's activities were not exempt.

We next address petitioner's contention, in his fourth assignment of error, that DPSST erred in assessing a penalty of $65,655.24 for the costs of the proceeding pursuant to ORS 703.995(1)(b) without first providing a contested case hearing. Under ORS 703.995, DPSST may impose civil penalties for violations of ORS 703.401 to 703.490. ORS 703.995(1)(a) provides that an individual is subject to a penalty not to exceed $500 for each violation; additionally, ORS 703.995(1)(b) allows DPSST to assess "the costs of the disciplinary proceedings as a civil penalty." Under ORS 703.995(3), "civil penalties under [ORS 703.995] shall be imposed as provided in ORS 183.745."

ORS 183.745 provides, in part, in turn:

"(1)   Except as otherwise provided by law, an agency may only impose a civil penalty as provided in this section.

"(2)   A civil penalty imposed under this section shall become due and payable 10 days after the order imposing the civil penalty becomes final by operation of law or on appeal. A person against whom a civil penalty is to be imposed shall be served with a notice in the form provided in ORS 183.415. Service of the notice shall be accomplished in the manner provided by ORS 183.415.

"(3)   The person to whom the notice is addressed shall have 20 days from the date of service of the notice provided for in subsection (2) of this section in which to make written application for a hearing. The agency may by rule provide for a longer period of time in which application for a hearing may be made. If no application for a hearing is made within the time allowed, the agency may make a final order imposing the penalty. A final order entered under this subsection need not be delivered or mailed to the person against whom the civil penalty is imposed.

"(4)   Any person who makes application as provided for in subsection (3) of this section shall be entitled to a

hearing. The hearing shall be conducted as a contested case hearing pursuant to the applicable provisions of ORS 183.413 to 183.470.

"(5)   Judicial review of an order made after a hearing under subsection (4) of this section shall be as provided in ORS 183.480 to 183.497 for judicial review of contested cases.

"(6)   When an order assessing a civil penalty under this section becomes final by operation of law or on appeal, and the amount of penalty is not paid within 10 days after the order becomes final, the order may be recorded with the county clerk in any county of this state. The clerk shall thereupon record the name of the person incurring the penalty and the amount of the penalty in the County Clerk Lien Record.

"* * * * *

"(10)   The notice provided for in subsection (2) of this section may be made part of any other notice served by the agency under ORS 183.415."

Thus, under ORS 183.745, a person against whom a civil penalty is to be imposed is entitled to notice and may request a hearing to challenge the penalty, to be conducted as a contested case hearing pursuant to ORS chapter 183. The required notice may be provided in "any other notice served by the agency" on the licensee. ORS 183.745(10).

DPSST's "amended notice of violations and contested case hearing" notified petitioner that DPSST would seek to impose a penalty of $500 for each violation and also would seek to recover its costs as a civil penalty. In a prehearing memorandum, DPSST provided petitioner a tally of its costs to date, which totaled $26,428.66. At the beginning of the hearing, petitioner requested that, in determining costs, the ALJ adhere to the procedure described in ORCP 68 for the award of costs, that petitioner be offered an opportunity to challenge the reasonableness of the cost award, and that a separate hearing be held.

Petitioner raised the issue of costs again at the conclusion of the hearing, contending that, should the ALJ determine that there were violations, petitioner should have an opportunity at a separate hearing to challenge

the reasonableness and necessity of the costs. At that time, DPSST's total costs had not yet been determined. DPSST's counsel contended that the amount of costs was not subject to challenge. She pointed out that DPSST is required to use the services of the Office of Administrative Hearings, ORS 183.635, and is required to be represented by the Attorney General in most contested case hearings. *See* ORS 183.452; OAR 137-003-0545. She asserted that the hourly fees for those services are set out by a schedule and are not negotiable. The ALJ allowed DPSST to present its costs to date and expressed skepticism with regard to petitioner's contention that he could challenge the reasonableness of those costs as a factual matter. The ALJ declined petitioner's request for an opportunity to present evidence challenging the reasonableness of DPSST's costs.[8]

Petitioner first learned the total costs to be assessed as a penalty when he received DPSST's amended proposed order. Petitioner objected, requesting a hearing to challenge the reasonableness of the costs and raising a number of other exceptions. DPSST rejected petitioner's request for hearing, explaining that petitioner had already had a hearing, that the assessed costs were based on actual charges to the agency, and that those costs had been adequately documented under this court's opinion in *Koller v. Veterinary Medical Examining Board*, 243 Or App 639, 641, 258 P3d 1285, *rev den*, 351 Or 318 (2011) (order assessing costs could not be reviewed in absence of documentation of hourly rate and time spent). In response to petitioner's contention that the assessed costs were unreasonable, DPSST explained that the costs were DPSST's actual costs and that they were not subject to a reasonableness standard under ORS 703.995(1)(b). DPSST rejected petitioner's contention that the cost-based penalty was excessive or disproportionate under the Eighth Amendment to the United States Constitution.[9] It also rejected petitioner's due process challenge, concluding that

---

[8] The ALJ also declined to make findings concerning the reasonableness of the costs incurred to date, explaining that the assessment of costs as a penalty was the agency's responsibility.

[9] The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed[.]" Petitioner no longer makes this argument on judicial review.

petitioner had had a meaningful opportunity to object to the imposition of costs through the filing of exceptions to the amended proposed order.

Petitioner's primary contention is that he should have been permitted to challenge the imposition of a cost-based penalty at a hearing. We agree with petitioner that he should have been given an opportunity at the hearing to present his objections. ORS 183.745(4) unambiguously allows a licensee to request a hearing to challenge the imposition of penalties, and the cost-based penalty assessed under ORS 703.995(1)(b) is a penalty subject to challenge. Although DPSST's total costs were not yet known at the timeof the hearing, that did not prevent petitioner from attempting to argue at the hearing that, in the event of a violation, no costs should be assessed or that only a portion of DPSST's costs should be assessed. Petitioner did not have that opportunity because the ALJ precluded it, and that was error.

But the error does not require reversal, because there has been no showing of prejudice. *Murphy v. Board of Parole*, 241 Or App 177, 187, 250 P3d 13, *rev den*, 350 Or 571 (2011) (holding that procedural error requires reversal of an administrative decision only if the error was not harmless, that is, that it caused prejudice). DPSST's order described the costs incurred,[10] and petitioner did not dispute that they were DPSST's actual costs. Petitioner challenged them by filing exceptions to the amended proposed order, arguing that the costs were unreasonable because they were excessive in light of the violations, and that the statute did not authorize the assessment of costs incurred in the prosecution of violations that were ultimately abandoned or determined to be unfounded. DPSST rejected his contentions and, on judicial review, petitioner contends that DPSST's consideration was inadequate, because he was entitled to present evidence "to develop the record to

---

[10] DPSST's costs consist of charges by the Department of Justice and the Office of Administrative Hearings. *See* ORS 180.160 (describing charges to agencies by Department of Justice); ORS 183.655 (describing charges to agencies by Office of Administrative Hearings). The agency's order described the hourly rate and the number of hours for Department of Justice attorneys and paralegals and Office of Administrative Hearings ALJs and staff.

argue the agency's exercise of discretion."[11] We are not persuaded that petitioner's contentions depended on evidence that was not already in the record. Rather, the challenges were legal, directed to the scope of the penalty authorized by ORS 703.995(1)(b). Although petitioner contends that he should have had a chance to present evidence at a hearing on the agency's exercise of discretion to assess costs, he does not describe the proposed evidence or state how the evidence might have assisted him to persuade DPSST to exercise its discretion in a particular manner. Petitioner also does not explain how presentation of his position at a public hearing, rather than through his objections to the amended proposed order, would have affected the outcome of the proceeding. We conclude that petitioner has not shown that DPSST's error in not permitting him to present his objections at the contested case hearing caused him prejudice.

Finally, we reject petitioner's contention in his fifth assignment of error that DPSST was required to adopt administrative rules describing the costs that could be recovered as a civil penalty under ORS 703.995(1)(b). Petitioner contends that some of the assessed costs are obscure and that DPSST should be required to describe them by rule.[12] But the statutory text does not explicitly require that DPSST describe its recoverable costs by administrative rule, and there is no basis in the text or context from which to imply a requirement for rules. *See Coffey v. Board of Geologist Examiners*, 348 Or 494, 498, 235 P3d 678 (2010) (describing criteria for determining whether an agency must enact rules before selecting a disciplinary sanction). As we have concluded, ORS 703.995(1)(b) contemplates the assessment

---

[11] The statute's provision that costs "may be assessed" is couched in discretionary terms. Accordingly, any review by this court would be for an abuse of discretion. *See Read v. Oregon Medical Board*, 244 Or App 603, 615, 260 P3d 771 (2011) (assessment of costs as civil penalty subject to review for abuse of discretion under ORS 183.482(8)). Although petitioner contends that he was entitled to develop the record "to argue the agency's exercise of discretion," he did not argue below and does not argue on judicial review that DPSST abused its discretion in deciding to assess a penalty under ORS 703.995(1)(b). Nor does petitioner claim that DPSST was obliged to adopt rules setting out the factors that it considers in deciding whether to impose a penalty.

[12] For example, petitioner complains that DPSST charged petitioner for "working capital assessed at 9%," "administrative costs," and "actual salary and benefits," without describing what those things are.

of all costs associated with the disciplinary proceeding. *See Adams v. Board of Medical Examiners*, 170 Or App 1, 4, 11 P3d 676 (2000) (so construing similar text). We conclude that DPSST was not required to adopt an administrative rule itemizing its recoverable costs. We therefore conclude that DPSST did not err in imposing a penalty under ORS 703.995(1)(b).[13]

 Affirmed.

---

[13] We reject without discussion petitioner's remaining contentions.